

**ORDERED in the Southern District of Florida on January 27, 2015.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re:                                                                      CASE NO. 14-20051-BKC-AJC

DANIELLE DAMIANOV,

                                                                              CHAPTER 7

                    Debtor.
_____/

### ORDER GRANTING DEBTOR'S MOTION TO CONVERT

        **THIS CAUSE** came before the Court on November 6, 2014, at 3:00 p.m., for an

evidentiary hearing on the Motion to Convert Case to Chapter 7 (the "Motion," Doc. No. 32),

filed by the Debtor, Danielle Damianov.  The Chapter 7 Trustee objected to conversion based

upon the Debtor's alleged bad faith.  The Debtor was the sole witness at trial.  The Court, having

considered the Motion; the objections raised by Barry Mukamal, the Chapter 7 Trustee; the

testimony and demeanor of Danielle Damianov at the hearing; and the documents introduced

into evidence by the Trustee,[1] **GRANTS** the Motion.

---

[1] At the hearing, the Trustee introduced Exhibits A through T.  The Debtor consented to the authenticity of the
exhibits, and the admissibility of all Exhibits except for Exhibit E, and Exhibits J through R, which he asserted were
not relevant.  The Court ruled that it would admit all of the Exhibits and later determine what is relevant.  The Court
has considered all the Exhibits and overrules Debtor's objections.

The transcript from the hearing and the testimony of the Debtor do not support a finding of bad faith.  The Court found the Debtor to be credible and believable and finds her explanations, set forth herein, to be plausible and reasonable under the circumstances.  The Trustee sought to prove her case through the testimony of the Debtor but that testimony did not suffice.  The record indicates the Debtor did not list in her bankruptcy filings certain interests held by her prior to the filing, notwithstanding that she testified at her first meeting of creditors that there were no omissions or errors in her documents.  The Debtor explained that she relied on counsel to prepare the Schedules and Statement of Financial Affairs and never reviewed the documents before signing them.  The Debtor amended her Schedules once since the filing to include certain taxes on Schedule E.

The Debtor and her spouse listed income slightly in excess of $2000 each, and indicated they do not foresee an increase in that amount.  The Debtor listed expenses at approximately $7162.  Given the foregoing, the Debtor has negative net income of over $3000 per month.  Debtor testified that, to reduce the expenses, she would have to move.  She stated that would cost another $1,000.

The Trustee's counsel questioned the Debtor regarding a home loan and mortgage on joint property.  In 2007 the property was quitclaimed to Debtor's spouse and in 2012, the spouse quitclaimed the property back to the Debtor.  The Debtor stated she believes the deed to the home is in both their names and that she and her spouse are both on the first mortgage.  She stated she believes only she is on the second mortgage.

Debtor testified that, upon advice of her bankruptcy counsel, one month prior to filing bankruptcy, she opened a joint account with her spouse and added her name to an open Wells Fargo account for emergency purposes only.  The Trustee questioned the Debtor with regard to a $110,000 deposit into the account at Wells Fargo, and questioned a subsequent withdrawal of

$100,000 ten (10) days later from that account.  The Debtor explained that her name was on the account for emergency purposes and she was unaware of the activity in the account.  She did not know the source of the deposit and did not know of the withdrawal ten days later.  While the Trustee intimated something sinister from not listing said deposit or withdrawal on the Statement of Financial Affairs, the Court believes the Debtor when she explained that it was not disclosed because she knew nothing about it.

The Debtor was also questioned with regard to her ownership interest in an entity called Lee County Investment Company which she did not list.  The Debtor transferred her interest to her husband in February 2010.  The value of that interest was not ascertained.

Finally, the Debtor was questioned with regard to a dry cleaning business she purchased with her mother.  Perfect Finish Cleaners was purchased on or around April 2008 for $675,000. A $250,000 down payment was made toward the purchase but the Debtor did not recall from where the down payment came.

While the Trustee argues the Debtor timed her bankruptcy filing and ownership interests in Lee County Investment and the dry cleaning company to avoid providing the value of these assets to either her or her husband's creditors, the Court does not believe the Trustee has proven the Debtor has the requisite bad faith intent to deny conversion, and the evidence failed to prove she has or had such intent to deceive the Trustee or the creditors.  The Court does not believe the Debtor intentionally, in bad faith, failed to schedule the $100,000 transfer from the Wells Fargo account, nor did she, in bad faith, fail to list her interests in certain assets from years earlier.

The Trustee has not provided sufficient evidence to show that the Debtor has moved to convert this Chapter 7 case to a Chapter 13 in bad faith.  The testimony elicited from the Debtor was credible, and did not demonstrate bad faith in the filing of Debtor's Schedules and Statement of Financial Affairs, nor did the evidence establish Debtor's bad faith in seeking conversion.

However, notwithstanding the issue of proof, the Trustee's references to the record raise serious questions, including whether the Debtor is even able to confirm a Chapter 13 plan on her stated income.  Accordingly, the Court will allow the conversion of the case to a case under Chapter 13 of the Bankruptcy Code, subject to confirmation of a plan.  Although it appears doubtful the Debtor can, with the stated income, confirm a Chapter 13 plan, the Court will allow conversion in an effort to provide the Debtor every opportunity to demonstrate conversion was warranted; but, if the Debtor fails to confirm a plan under Chapter 13, this case will not be dismissed but rather reconverted to Chapter 7.  It is therefore

**ORDERED AND ADJUDGED** that the Motion to Convert is **GRANTED**, subject to the Debtor confirming a Chapter 13 plan.  If the Debtor fails to timely confirm a Chapter 13 plan, then this case shall not be dismissed but shall be reconverted to a Chapter 7 case.

###

Copies to:

Andrew D. Zaron, Esq.
Michael Frank, Esq.

Attorney Frank shall serve a copy of this Order on the Debtor and the Debtor's counsel, Michael Frank, Esq., and file a certificate of service.